UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-21028-CV-WILLIAMS/TORRES

MIMI KORMAN,

    Plaintiff,

v.

JULIO IGLESIAS,

    Defendant.

_____/

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR ATTORNEYS' FEES**

    We are tasked with resolving a Motion for Attorneys' Fees filed by Defendant JULIO IGLESIAS on December 20, 2018. [*See* D.E. 63]. Plaintiff MIMI KORMAN filed a Response in Opposition to the original Motion for Fees [D.E. 54] on October 30, 2018, basing her arguments entirely on the entitlement issue. [D.E. 59]. On December 6, 2018, we entered a Report and Recommendation on entitlement, finding Defendant could only recover fees pursuant to 17 U.S.C. § 505 and requiring Iglesias to submit a supplemental motion for fees to only include work performed on the copyright claim. [D.E. 62]. Defendant filed this Motion fourteen days later. [D.E. 63]. That Motion is now before the Court, and we hereby **RECOMMEND** that it be **GRANTED in part** and **DENIED in part.**

        *I.    FACTUAL BACKGROUND*

    Plaintiff filed her lawsuit on March 19, 2018. [D.E. 1]. Her Complaint sought damages against Defendant for copyright infringement stemming from the alleged

1

authorship of the song "Me Olvide de Vivir." Plaintiff argued she was the sole author of the song and never assigned her copyright of the lyrics to Defendant. To that end, she filed suit and sought damages and injunctive relief under the Copyright Act and Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"").

Defendant moved to dismiss the Complaint on April 23, 2018. [D.E. 16]. In that Motion, Iglesias argued that the doctrines of res judicata and collateral estoppel precluded Plaintiff from asserting her copyright claim because the matter has been litigated twice before – once in federal court in 1993, and again in state court in 2015. Iglesias also raised a legal challenge to the FDUTPA claim, arguing it was preempted by the Copyright Act.

On June 28, 2018, we entered a Report and Recommendation on the Motion to Dismiss. [D.E. 36]. We found that Plaintiff's Copyright Act claim should be dismissed with prejudice based on Defendant's res judicata and collateral estoppel arguments, but that she could amend her Complaint to allege additional facts in support of her FDUTPA claim. The Honorable Judge Kathleen M. Williams adopted our Report and Recommendation on August 7, 2018, requiring Korman to amend her FDUTPA claim within fourteen days. [D.E. 46].

No amendment ever occurred. Plaintiff filed a Notice of Appeal on the dismissal order on September 6, 2018, and Defendant moved forward with a Motion for Attorney's Fees a month later. [D.E. 54]. We found that Defendant could recover fees under the Copyright Act, but only for work related to defense of the copyright action.

2

*Id*. Judge Williams adopted our Report and Recommendation on that issue on January 2, 2019. [D.E. 66].

Now before the Court is Defendant's Supplemental Motion for Attorneys' Fees. [D.E. 63]. In that Motion, Defendant asks that it be awarded $44,070.43 for the work of both attorneys on the file. Defendant further argues that he cannot comply with our directive that he only submits fees associated with the copyright claim because the attorneys did not separate time spent litigating each individual claim, and so the award would purportedly involve all work billed on the file – FDUTPA claim included. *Id*.

We now turn to the Motion.

## II.  LEGAL STANDARD

Defendant seeks to recover its reasonable attorneys' fees as the prevailing party under the Copyright Act. [D.E. 62]. Section 505 of the Copyright Act authorizes an award of such fees and provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. The Copyright Act gives the Court broad discretion to determine whether the amount of the fees is reasonable. *See Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 155-56 (3d Cir. 1986). In *Fogerty v. Fantasy, Inc.*, the Supreme Court approved the following boundaries for the exercise of discretion in awarding fees under the Copyright Act set by the Third Circuit in *Lieb*: (1) a finding of bad faith is

3

not required for an award; (2) an award is not mandated in every case; and (3) the exercise of discretion should be applied evenhandedly. *See* 510 U.S. 517, 526 (1986).

The *Lieb* factors have been endorsed by the Eleventh Circuit. *See MiTek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842 (11th Cir. 1999). While the award of attorney's fees under Section 505 lies within the discretion of the District Court, where a defendant is the prevailing party in a copyright case, the presumption in favor of awarding fees is very strong. *See Lil' Joe Wein Music, Inc. v. Jackson*, 2008 WL 2688117, at *4 (S.D. Fla. July 1, 2008); *Hermosilla v. Coca-Cola Co.*, 2011 WL 9364952, at *3-4 (S.D. Fla. July 15, 2011).

### III.   ANALYSIS[1]

We must use the lodestar method to calculate any fee award. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Cuban Museum of Arts & Culture v. City of Miami*, 771 F. Supp. 1190, 1191 (S.D. Fla. 1991). This requires us to multiply Defendant's counsel's reasonable hourly rate by the reasonable hours expended. *Norman*, 836 F.2d at 1299. We must not, however, "become green-eyeshade accountants," and the essential goal "is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Defendant

---

[1] Although Plaintiff only opposed the entitlement issue, and did not file a response in opposition to the actual amount of fees sought by Defendant, we must nevertheless look to the award request to make sure it is reasonable. *Gordy v. New River Pizza, Inc.*, 565 F. Supp. 2d 1345, 1347 (S.D. Fla. 2008) ("[T]he courts have a corresponding duty to make sure that [an attorney's fee] award is reasonable. … The determination of exactly what amount of fees to award is vested in the sound discretion of the Court."). Thus, even without a brief in opposition to the rates sought and the hours expended, we will in our discretion nevertheless decide what constitutes a "reasonable" fee.

bears the burden of documenting reasonable hourly rates and reasonable hours expended. *See ACLU of Ga. V. Barnes*, 168 F.3d 4233, 427 (11th Cir. 1999); *Norman*, 836 F.2d at 1303.

### 1. *Reasonable Hourly Rate*

We must first evaluate the fee award request by first making certain the rates sought by the moving party are reasonable. In doing so, we must consider the customary hourly rates charged in the community by attorneys offering similar services. *See Norman*, 836 F.2d at 1299; *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984) (a court must look to the "prevailing market rates in the relevant community" to determine a reasonable hourly rate). A court should consider several factors when determining the prevailing market rate, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion from other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Malloy v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996).

Steven Eisenberg and Russell King represented Defendant in this matter. Both seek a fee award at an hourly rate of $425. According to the Motion, "Mr. Eisenberg has practiced law in the State of Florida since 1984" and "has been recognized by various publications for his excellence." [D.E. 56, p. 5]. Mr. King has practiced since 1996 "and regularly handles entertainment law matters." *Id*.

5

After our review of the billing records attached to Defendant's Motion, however, we find that a reduction in the hourly rate requested is warranted. This is not to say that the attorneys on the file somehow lacked qualifications or the requisite experience necessary to defend the claim. Instead, a reduction is warranted because of the actual work performed on the file: in our view, the billing records indicate that both Mr. Eisenberg and Mr. King spent time on tasks customarily assigned to junior-level attorneys.

Indeed, many tasks billed by the lawyers involved simple research on various legal issues, preparation of routine motions submitted to the Court, and clerical tasks. A few examples from Mr. Eisenberg include: (1) work performed on April 3, 2018, in which he reviewed a "court file" from the original lawsuit at the courthouse; (2) time spent reviewing deposition transcripts on April 6, 2018; (3) over 11 hours of research preparing motions to dismiss and strike on April 19 and 20, 2018; and (4) preparation of court-ordered filings on May 8, 2018. [D.E. 54, pp. 12-14]. As for Mr. King, he spent time retrieving case files[2] from a previous federal lawsuit – involving the same issues – on April 3, 2018, and often billed for time reviewing routine motions drafted by Mr. Eisenberg throughout the course of the litigation. *Id.*, pp. 24-30.

This is only a sample of the various "associate-level" tasks performed by both attorneys; in fact, this type of work predominates both files. Considering this evidence, we find it would be unreasonable to expect a client to pay for this work at a premium rate, and that a reduced hourly figure would be more appropriate. *See Arbor*

---

[2] As we discuss later, this work is also duplicative of Mr. Eisenberg's, as shown from the time entries Eisenberg made that same day.

*Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2008) (courts must "step[ ] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively."); *Daggett v. Kimmelman*, 811 F.2d 793, 799 (3d Cir. 1987) ("While it may be appropriate for a lawyer…to charge his private clients $300.00 or more per hour, there nevertheless comes a point where a lawyer's historic rate, which private clients are willing to pay, cannot be imposed on his or her adversaries."). Courts in our district have routinely applied these principles and entered fee awards that reduced the hourly rates charged by well-respected law firms on work completed by highly-experienced attorneys. *See Tiara Condom. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1366 n.11 (S.D. Fla. 2010) (reducing hourly rates charge by highly-regarded law firm by 19 to 25 percent); *Global Horizons Inc. v. Del Monte Fresh Produce N.A., Inc.*, 2009 WL 855970, at *4 (S.D. Fla. Mar. 31, 2009) (awarding discounted hourly rates for premium South Florida law firm).

Given our experience in this community and with fee disputes in general, we find that a "blended" rate of $300.00 per hour for both Mr. Eisenberg and Mr. King would be more appropriate for the work performed here. *See Hermosilla v. Coca-Cola Co.*, 2011 WL 9364952, at *11 (S.D. Fla. July 15, 2011) (modifying rate of certain attorneys for, among other reasons, performing tasks normally associated with junior-level attorneys). As such, this rate will be used to calculate the lodestar.

## *2. Hours Reasonably Expended*

The Court must next evaluate the reasonableness of the hours expended by Defendant's counsel in litigating the case for their client. Parties must exercise what the Supreme Court has termed "billing judgment" when making such a fee request, *Barnes*, 168 F.3d at 428 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)), which requires exclusion of hours that are deemed "excessive, redundant, or otherwise unnecessary." *Id*. The moving party must exclude hours "that would be unreasonable to bill to a client[,] and therefore to one's adversary[,] irrespective of the skill, reputation or experience of counsel." *Id*. (citing *Norman*, 836 F.2d at 1301).

We find that the number of hours billed by each attorney should be reduced for three separate reasons: (1) certain hours are redundant or duplicative; (2) the billing records include tasks performed by senior attorneys that are clerical (and therefore unrecoverable); and (3) certain hours sought are excessive.

We will first remove the redundant tasks billed to the file by both Mr. Eisenberg and Mr. King. "Redundant hours generally occur where more than one attorney represents a client." *Norman*, 836 F.2d at 1301-02. "There is nothing inherently unreasonable about a client having multiple attorneys, and they may be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Id*. But, as stated above, parties must exercise billing judgment and exclude hours that appear to be redundant. *Hensley*, 461 U.S. at 434; *see also Hermosilla*, 2011 WL 9364952, at *16

("[T]he fee applicant must establish the time spent reflects the distinct contribution of each lawyer to the case.").

One need not look too far to see clear examples of duplicative billing. On April 3, 2018, Mr. King billed 2.4 hours for time spent retrieving Ms. Korman's case file from a previous federal lawsuit at the courthouse. [D.E. 54, p. 25]. On that same date, Mr. Eisenberg provided a nearly identical description for work he performed that day, billing 2.7 hours for "review[ing the] court file from [the] original *Korman v. Iglesias* case at [the federal] courthouse." [D.E. 54, p. 12]. Ignoring for a moment that this work must almost certainly be considered clerical – and that Defendant cannot recover fees for such clerical work when performed by senior attorneys – the identical descriptions make clear that both attorneys billed for the same task. This cannot be included in any fee award. *See Perkins v. Mobile House Bd.*, 847 F.2d 735, 738 (11th Cir. 1988) ("[A] court may reduce excessive, redundant or otherwise unnecessary hours in the exercise of billing judgment.").[3]

We will also exclude from the fee award the time billed by both attorneys spent "discussing" the case at hand. Many times, the billing records show both attorneys engaging in "telephone conferences" with each other to discuss the case, or "reviewing" plans some future action. [*See generally* D.E. 54, pp. 17, 19, 27-28]. This time must also be excluded from the fee award. *See Lee v. Krystal Co.*, 918 F. Supp.

---

[3] Other duplicative entries include time spent on April 23 by both attorneys drafting, commenting and finalizing Defendant's Motion to Dismiss; several instances where both lawyers reviewed communications from opposing counsel and then discussed same; and entries detailing both Mr. Eisenberg and Mr. King spending time – some would say to the point of excess – reviewing, discussing, and strategizing over routine orders and directives from this Court.

2d 1261, 1270 (S.D. Ala. 2013) ("With so many cooks making the broth, the need for internal conferences to keep everyone on the same recipe rises dramatically and undermines the reasonableness of those billings."); *Del Rosario v. King & Prince Seafood Corp.*, 2010 WL 11519378, at *8 (S.D. Ga. July 15, 2010) (reducing award for the "redundant review of filed documents, the attendance at depositions and hearings by more than one attorney, and the necessity of numerous attorney conferences billed by the four remaining attorneys[.]"); *Mokover v. Necco Enters.*, 785 F. Supp. 1083, 1090 (D. R.I. 1992) (reducing number of hours billed where there had been "seemingly endless hours billed for conferences with co-counsel in a case whose simplicity does not even in the first instant warrant [ ] co-counsel.") (quotations omitted).

Next, Defendant will not be compensated for clerical tasks performed by Mr. Eisenberg and Mr. King. *See Munoz v. Kobi Karp Arch. & Interior*, 2010 WL 2243795, at *6 (S.D. Fla. May 13, 2010) ("Plaintiff's counsel is not entitled to recover attorney's fees for the performance of clerical tasks."); *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000) (with regard to clerical work, "attorneys should not receive full compensation for performing services that should have been delegated to non-lawyers."). For example, on April 9, 2018, Mr. Eisenberg billed 1.0 hours reviewing the court's "specialized procedures in connection with" motions for extension of time to respond to a complaint. [D.E. 54, p. 12]. He also billed for time preparing a proposed order on that very motion. *Id*. On May 15, 2018, he billed for time spent preparing "court required" filings, and "calendaring" the due date to file his reply to the initial motion to dismiss. *Id*. This work is not recoverable. *Hershkovitz*

10

*v. Innovative Const. & Design, Inc.*, 2008 WL 824222, at *2 (M.D. Fla. Mar. 25, 2008) ("While the Court does not take issue with the rates charged by the professionals involved…the fees charged include work not properly chargeable to one's adversary…and work that is, at best, clerical in nature[.]").

Finally, the billing records contain excessive hours billed for certain tasks. We are troubled that counsel spent more than thirty (30) hours drafting a motion to dismiss, especially when one considers that the motion spanned a mere fourteen (14) pages and dealt with arguments set forth in prior lawsuits brought by this particular Plaintiff. [D.E. 54, p. 15].[4] We also view as unreasonable the 19.4 hours billed for preparing and drafting a reply brief, a pleading only eleven (11) pages long at the time of filing. This equates to roughly 1.5 hours spent on *each page* of the reply, which is clearly excessive, especially when many of the arguments contained in the pleading repeat similar arguments advanced in the original motion to dismiss.

When the number of hours billed to the file that are deemed unreasonable, the Court has two options: it can decide to follow the usual course and engage in a task-by-task examination of the hours billed in order to excise excessive or redundant hours, or – when the number of hours involved is very high – the Court can conclude that an hour-by-hour analysis is impractical and make an across-the-board percentage cut. *See Barnes*, 168 F.3d at 429; *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (determining that 569.3 hours submitted for

---

[4] The excess involved becomes even more apparent when one takes into account the fact that co-counsel billed more than three hours working on the same motion. [D.E. 54, p. 25].

compensation was "extensive enough that we do not expect the district court or magistrate judge to conduct an hour-by-hour analysis in the case."). Here, a task-by-task examination makes more sense, as we are not dealing with a voluminous billing file and the records provide enough detail to allow us to remove the unreasonable time entries. *See Barnes*, 168 F.3d at 428 ("If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant or otherwise unnecessary.' ").

After "pruning" the excessive, redundant, and clerical work performed on behalf of Defendant during the litigation, we are left with the following recoverable hours: (1) 55.1 hours for the work performed by Mr. Eisenberg; and (2) 5.9 hours for work performed by Mr. King. This represents a more appropriate amount of time spent on the case file, and will be used to calculate the final lodestar figure.

### 3.   *Lodestar Adjustment*

Multiplying the hours reasonably billed – 61.0 hours total – by the blended rate of $300 per hour, we are left with a lodestar figure totaling $18,300. As there is a "strong presumption that the lodestar is the reasonable sum the attorneys deserve," *Bivens*, 548 F.3d at 1350, we see no reason to adjust this figure. *See Resolution Trust Corp. v. Hallmark Builders*, 996 F.2d 1144, 1150 (11th Cir. 1993). We believe this sum to be an appropriate award based on Defendant's attorney's effort and the result obtained.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion for Attorneys' Fees be **GRANTED in part** and **DENIED in part**, and that Defendant receive an attorney's fee award totaling $18,300.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the Honorable Marcia G. Cooke, United States District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 4th day of April, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge